■ EDWARD WEINSTOCK, Respondent, v MERISEL, INC., et al., Appellants. [984 NYS2d 351]—

Order, Supreme Court, New York County (Melvin L. Schweitzer, J.), entered April 25, 2013, which granted plaintiff's motion for partial summary judgment on his breach of contract cause of action, unanimously affirmed, with costs.

Plaintiff sues for one year's salary plus commissions owed under an October 2006 employment contract with defendant Merisel, Inc., claiming he was wrongfully terminated on February 10, 2011 from his position as President of Merisel's Fuel Division. Plaintiff had been President of Fuel Digital, Inc. which had been sold to Merisel pursuant to an asset purchase sale in 2006. Both Fuel Digital and Merisel performed digital retouching services for clients in the fashion industry.

Plaintiff's employment contract specifically provided that he was hired as President of the Fuel Division of Merisel for an annual base salary of $300,000, plus additional compensation, and that if he was terminated without cause, he would be owed one year's base salary plus his earned commissions as severance. It further provided that if plaintiff was terminated for cause, he would only be entitled to earned base salary and commissions. "Cause" is defined in paragraph 8 (c) as (i) breach of the employment agreement, (ii) failure to perform job duties, (iii) conviction of a crime, (iv) engaging in misconduct or violence detrimental to Merisel, (v) material breach of Merisel's policies or the law, (vi) refusal to follow the reasonable directives of Merisel's board, and (vii) misconduct that materially injures the financial condition of Merisel. Plaintiff was also obligated not to compete with defendant for one year following his termination.

Plaintiff avers, and the motion court found, that after extensive discovery, defendant is unable to establish any basis for finding that the termination was for "cause" and that plaintiff is entitled to summary judgment awarding him one year's salary and earned commissions pursuant to his contract. The court found that none of the claims of disloyalty that would have been a basis to deny summary judgment were founded.

Defendants argue that plaintiff was terminated for cause based on misconduct or an act of dishonesty "that is injurious to the Company." They maintain that plaintiff "surreptitiously"

copied data for a client, Lane Bryant, and that he encouraged several Merisel employees to leave and join a competitor company, Splash, which was founded by a former Merisel employee.

The claim for copying is based solely on the affidavit of a junior level employee who averred that in January of 2011, plaintiff requested that he copy files of Lane Bryant's images for a direct mail catalog onto a silver computer disk. Lane Bryant was one of Fuel's clients and had requested such a file. The employee sent an email indicating that he told plaintiff that this was illogical because Lane Bryant already had the images, and plaintiff emailed back, "Ok, no problem. Thanks." The employee then said that plaintiff "reiterated the request verbally" and "told me to copy the files as soon as possible," which he did. Defendant originally averred that this constituted a theft of its intellectual property.

Plaintiff denies having made a verbal request for a silver disk and no disk has been produced. At her deposition, Susan Reiser, plaintiff's contact at Lane Bryant who originally requested the images, denied ever having received such a disk. Reiser testified that she had used Merisel or Fuel on an individual project basis and had asked plaintiff to have archived images sent to Lane Bryant for possible internal retouching, but did not follow through or receive the images from Merisel. She also testified that she stopped using Merisel after plaintiff was terminated, but only after Merisel's Chief Client Officer, Michael Berman, called her and "yelled at" or "berated" her, accusing her of stealing Merisel's property which she did not have, and which, in any event, she believed belonged to Lane Bryant. Reiser used the words "vicious" and "besmirchy" to describe the call and said she told him to stop persisting with his "agenda."

Defendants also refer to an internal email sent by Reiser to Alexia Eder, Lane Bryant graphic designer, on February 3, 2011, before the call from Berman, in which she asks, "can we push April model shots to splash." The email also indicates that Lane Bryant could, on its own, upload shots from Fuel to be forwarded to Splash. The email demonstrates both that no disk was needed and that Lane Bryant already had access to its own images. Reiser indicated that all the email meant was that they had been considering Splash for a particular project, but planned to continue using Merisel's services. Nothing in the email implicates plaintiff.

While defendants now acknowledge that even if such a disk were made, there was no theft of property because the images belonged to Lane Bryant, they persist in contending that it was

part of a scheme that plaintiff was involved in to transfer business to Splash. However, even if this court were to credit the employee's affidavit stating that plaintiff requested a disk, there is no evidence that such a request was either "surreptitious" or anything other than an effort to comply with a client's legitimate request. Nor, is there any evidence that it was part of a scheme to transfer business to Splash. Moreover, since plaintiff complied with his employment contract and did not compete with Merisel for at least one year after being terminated, there is no basis to conclude that he benefitted from the creation of such a disk or hard drive.

With respect to the allegation that plaintiff assisted or convinced employees to leave Merisel and join Splash, affidavits submitted by those employees belie that claim. The former employees each attest that they left Merisel because their working conditions were "getting progressively worse," they had been passed over for promotion, and their salaries were cut pursuant to a company-wide 10% reduction while, at the same time, the top Merisel executives received substantial bonuses. They specifically deny that plaintiff had anything to do with their leaving.

On February 3, 2011, just seven days before plaintiff was terminated, defendant's Chief Executive Officer, Donald Uzzi, sent plaintiff a long email, following a conversation between them, which indicated that he appreciated plaintiff giving him a "commitment to stay with Merisel and continue to develop and protect [its] clients to advance the success of Merisel." He further stated, "I appreciate your loyalty to Merisel as well as myself." This email was sent well after other employees had left Merisel to join Splash. It is not alleged that anything specific occurred between the time Uzzi emailed plaintiff and his termination one week later and defendants are not claiming that they had any other grounds for termination. Accordingly, the trial court correctly granted plaintiff summary judgment on his cause of action for breach of contract. Concur—Acosta, J.P., Renwick, Moskowitz, Freedman and Feinman, JJ. [**Prior Case History: 2013 NY Slip Op 33243(U).**]